USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                :     **OPINION AND**
                                                     :     **ORDER**
DPH HOLDINGS CORP., et al.,                          :
                                                     :     Chapter 11
                         Reorganized Debtors,  :     No.  05-44481
                                                     :     Jointly Administered
------------------------------------------------------------X
MICHIGAN SELF-INSURERS' SECURITY                     :
FUND,                                                :
                                                     :
                         Plaintiff-Appellant,  :     Adversary Proceeding
                                                     :
- against -                                          :
                                                     :     10 Civ. 646 (SAS)
DPH HOLDINGS CORP.,                                  :
                                                     :
                         Defendant-Appellee.   :
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

        The Michigan Self-Insurers' Security Fund ("Fund") appeals from a final order of the bankruptcy court for the Southern District of New York denying its motion to file two late claims against Reorganized Debtors DPH Holdings, Inc. For the reasons set forth below, the judgment of the bankruptcy court is affirmed.

## II. BACKGROUND

        The Fund was established in Michigan by statute "to provide payment of workers' compensation obligations of self-insured employers that become

insolvent and unable to continue to make payments to [their] injured workers."[1] In May 1999, DPH (known at the time as the Delphi Corporation) was approved to be self-insured for its workers' compensation obligations.[2]

In October 2005, DPH filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York for reorganization under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").[3] DPH, at this time, "was current on payments to [its] employees arising from workers' compensation claims in Michigan"[4] and "sought the authority to pay certain wages, salaries, and other benefits, including amounts related to workers' compensation claims."[5] On October 13, 2005, the bankruptcy court issued the Human Capital Obligations Order, which provided that DPH was "authorized, but not directed, to pay or otherwise honor workers' compensation claims."[6] Accordingly, DPH

---

[1] The Fund's Memorandum of Law in Support of Its Appeal from the Bankruptcy Court's Order Denying the Fund's Motion to Permit Late Filed Claims ("App. Mem.") at 1.

[2] *See id.*

[3] *See id.* at 1–2; DPH's Memorandum in Opposition to the Fund's Appeal ("Opp. Mem.") at 2.

[4] App. Mem. at 2.

[5] Opp. Mem. at 2.

[6] *Id.* at 3 (quotation marks omitted).

continued to pay its employees' workers' compensation.[7]

In April 2006, the bankruptcy court set July 31, 2006, as the Bar Date — the deadline for creditors to file proofs of claim against DPH.[8] It is undisputed that DPH informed the Fund and other creditors, by means of a Bar Date Notice, that DPH's creditors must bring any proofs of claim by the Bar Date.[9]

On December 10, 2007, DPH submitted its first reorganization plan to the bankruptcy court.[10] A component of this plan "provided that Workers' Compensation claims would flow through the case and would be dealt with in the ordinary course, as if the bankruptcy case hadn't happened."[11] The court confirmed this plan on January 25, 2008,[12] and on the same day, DPH sent a letter to a director of the Michigan Workers' Compensation Agency ("MWCA") (the Fund had knowledge of this letter and its contents), stating, inter alia, that DPH "intends to continue to provide its Michigan-based employees with workers'

---

[7]   See 12/18/09 Hearing Transcript (Hr'g Tr.) at 64:14–64:17.

[8]   Opp. Mem. at 3; App. Mem. at 2.

[9]   See Opp. Mem. at 3.

[10]  See App. Mem. at 3.

[11]  Hr'g Tr. at 64:19–64:21.

[12]  See App. Mem. at 3.

compensation in accordance with Michigan law on a self-insured basis."[13] In October 2008, DPH successfully moved to modify its reorganization plan and sent a letter to a different director of the MWCA (the Fund also knew of this letter), repeating its intent to maintain its workers' compensation obligations.[14]

DPH moved to further modify the reorganization plan on June 1, 2009.[15] This time, however, the modified reorganization plan did not include the "flow through" provision; thus, DPH would stop making workers' compensation payments.[16] After learning about this modification, the Fund filed two proofs of claim on July 29, 2009 — the first day of the bankruptcy court's hearing on the modifications.[17] One claim is a priority claim for $25,460,432.50 based on excise taxes for workers' compensation obligations, and the other claim is a general unsecured claim for workers' compensation obligations in the amount of $26,293,480.00.[18] The modified reorganization was approved by the bankruptcy

---

[13] *Id.* at 4.

[14] *See id.*

[15] *See id.* at 5.

[16] *See* Hr'g Tr. at 64:22–65:2.

[17] *See* Opp. Mem. at 4; App. Mem. at 5.

[18] *See* App. Mem. at 5; Opp. Mem. at 5. A dispute of fact exists as to whether the Fund had paid any workers' compensation benefits at the time it filed its late proofs of claim. *See* Opp. Mem. at 5 n.3 ("the fund has not paid any such

court on July 30, 2009,[19] and on October 6, 2009 — the effective date of the reorganization and end of Chapter 11 bankruptcy — DPH ceased paying workers' compensation.[20] Shortly after, DPH objected to the Fund's late-filed proofs of claim.[21]

On November 9, 2009, the Fund moved to permit their late claims pursuant to Federal Rule of Bankruptcy 9006(b)(1).[22] DPH objected to this motion, and the bankruptcy court held a hearing on the motion on December 18, 2009.[23] At the hearing, the court ruled "that the Fund has not carried its burden to establish excusable neglect here in respect of its proof of claim."[24] On December 23, 2009, the court "entered an order denying the [m]otion and disallowing the

---

benefits"); *but see* Reply Memorandum of the Fund at 2 ("the . . . Fund *has* paid significant benefits"). Regardless, the Fund determined its claim amounts using estimation procedures anticipating future workers' compensation payments. *See* Hr'g Tr. at 57:22–58:24.

[19] The Bankruptcy Judge approved the plan despite the Fund's claims because the judge "determined that the claim being over three years late, would not, in all likelihood, have such an impact, because it would be disallowed." Hr'g Tr. at 67:17–67:19.

[20] *See* App. Mem. at 5.

[21] *See* Opp. Mem. at 6.

[22] *See* App. Mem. at 5.

[23] *See id.* at 6.

[24] Hr'g Tr. at 75:10–75:12.

Fund's claims."[25] The Fund brought the present appeal from this order on December 29, 2009.[26]

## III. APPLICABLE LAW

### A. Appeals of Bankruptcy Court Orders

District courts are vested with appellate jurisdiction over bankruptcy courts.[27] Final orders of the bankruptcy court may appealed to the district court as of right.[28] An order is final if "[n]othing in the order . . . indicates any anticipation that the decision will be reconsidered."[29]

"Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion."[30] A court abuses its discretion when it makes

> (i) a decision "rest[ing] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,"

---

[25]   Opp. Mem. at 6.

[26]   *See id.*

[27]   *See* 28 U.S.C. § 158(a).

[28]   *See id.* § 158(a)(1).

[29]   *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 620 (2d Cir. 1999) (quotation marks omitted).

[30]   *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 124 (2d Cir. 2005). *Accord Lynch v. United States (In re Lynch)*, 430 F.3d 600, 603 (2d Cir. 2005) ("This court reviews for abuse of discretion a district court's determination that a party has failed to establish excusable neglect.").

or (ii) [makes] a decision that, "though not necessarily the product of a legal error or a clearly erroneous factual finding[,] cannot be located within the range of permissible decisions."[31]

"Moreover, 'to further the purposes of Chapter 11 reorganization, a bankruptcy judge must have substantial freedom to tailor his order to meet differing circumstances.'"[32]

### B. Excusable Neglect

#### 1. Under Rule 9006(b)(1)

Section 101(5)(a) of the Bankruptcy Code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."[33] Rule 3003(c)(2) provides that "[a]ny creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or

---

[31] *Schwartz v. Aquatic Dev. Group, Inc.* (*In re Aquatic Dev. Group, Inc.*), 352 F.3d 671, 678 (2d Cir. 2003) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

[32] *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1069 (2d Cir. 1983)).

[33] 11 U.S.C. § 101(5)(a).

interest"[34] before the bar date set by the bankruptcy court.[35] A "creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."[36]

Rule 9006(b)(1) enables a bankruptcy court to allow a late claim if the delay was the result of excusable neglect.[37] Specifically, Rule 9006(b)(1) provides that

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.[38]

The late-filing creditor carries the burden of proving excusable neglect.[39]

### 2. The *Pioneer* Test

The Supreme Court, in *Pioneer Investment Services Co. v. Brunswick*

---

[34] Fed. R. Bankr. P. 3003(c)(2).

[35] *Id.* 3003(c)(3).

[36] *Id.* 3003(c)(2).

[37] *See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993).

[38] Fed. R. Bankr. P. 9006(b)(1).

[39] *See, e.g., Enron*, 419 F.3d at 121.

*Associates Ltd. Partnership*, developed a two-prong test for excusable neglect.[40] Late creditors must prove both "neglect," and that the neglect was "excusable."[41] The Court determined that neglect applies to behavior "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."[42]

In deciding whether such neglect is excusable, the Court applies a flexible standard — "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[43] This analysis is refined into four factors: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."[44]

A finding of prejudice to the debtor is aided by several considerations including "size of the claim," "whether the debtor had advance knowledge of the claim," and "whether allowing a claim would be likely to precipitate a flood of

---

[40] *See Pioneer*, 507 U.S. at 395.

[41] *Id.* at 388, 395.

[42] *Id.* at 388.

[43] *Id.* at 395.

[44] *Id.*

similar claims."[45] Prejudice also includes "the adverse impact that a late claim may have on the judicial administration of the case,"[46] and, therefore, overlaps with the second *Pioneer* factor.[47] There is no "bright-line rule" that governs the substantiality of the length of the delay — "the lateness of a claim must be considered in the context of the proceeding as a whole."[48]

The Second Circuit focuses its excusable neglect standard on the third factor — the reason for the delay.[49] In this Circuit, the third factor "predominates, and the other three are significant only in close cases."[50] *Pioneer* states that "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect . . . is

---

[45] *Enron*, 419 F.3d at 130.

[46] *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).

[47] *See Enron*, 419 F.3d at 130 ("[M]any [considerations of prejudice] are, of course, the same as those taken into account in evaluating the length of the delay . . . .").

[48] *Id.* at 128.

[49] *See id.* at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)) (noting that the third factor is emphasized because the other three factors usually weigh in favor of the moving party).

[50] *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415–16 (2d Cir. 2004).

a somewhat elastic concept."[51] However, the Second Circuit has taken a "hard line" in finding excusable neglect.[52] Where a court "rule is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test."[53]

## IV. DISCUSSION

### A. Appealability

It is well settled that bankruptcy court orders denying requests to file late claims are final orders that can be appealed to the District Court.[54] Moreover, in this particular case, the court did not express any anticipation of reconsideration of its decision during the hearing on the motion and in the order denying the motion. It follows that this Court has jurisdiction to decide the present appeal.

### B. Reviewing the Bankruptcy Court's *Pioneer* Analysis

This Court must determine whether the bankruptcy court abused its discretion by denying the Fund's motion to permit the late-filed claims. The Fund does not allege that the court made any "error of law" or "erroneous factual

---

[51] *Pioneer*, 507 U.S. at 392.

[52] *Silivanch*, 333 F.3d at 368.

[53] *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997).

[54] *See, e.g., Enron*, 419 F.3d at 124.

finding" — the Fund only alleges that the court erred by failing to find "excusable neglect" based on the facts presented. Thus, the issue is whether the court, in balancing the *Pioneer* factors that determine excusable neglect and choosing not to allow the Fund's late claims, made a decision "outside the range of permissible decisions."[55] Because the *Pioneer* definition of excusable neglect is characterized as a flexible standard, a court's range of permissible decisions when deciding a Rule 9006(b)(1) motion is fairly broad.[56] Keeping this in mind, I will review the bankruptcy court's treatment of each *Pioneer* factor, as well as its balancing of the factors, for abuse of discretion.

### 1. Prejudice to the Debtor

The bankruptcy court did not focus its analysis on this factor, but it did find that granting the motion would create prejudice towards DPH, while denying the motion would create prejudice towards the Fund. At its hearing on the motion, the court stated, in general terms, that "[a]llowing late filed claims, especially after a debtor's plan is confirmed, subjects the debtor to prejudice, because it would have to renegotiate settlements reached in contemplation of the

---

[55] *See supra* note 31 and accompanying text.

[56] *See Enron*, 419 F.3d at 118 ("[T]he bankruptcy court did not abuse its *considerable* discretion in finding that the creditor's neglect in this case was not excusable . . . ." (emphasis added)).

known claims against the estate."[57]

The Fund argues that because its claims are small when compared to the size of DPH's bankruptcy estate, a late filing will not prejudice DPH. The Fund's claims total $61 million while the total amount of unsecured claims allowed was between $3.4 and $3.62 billion.[58] However, bankruptcy courts have found prejudice to the debtor in analogous situations when the late claims were only a small percentage of the bankruptcy estate.[59] Thus, the bankruptcy court did not abuse its discretion by suggesting that DPH would be prejudiced if the court allowed the Fund's late claims to be filed.

Although this factor looks solely at prejudice to the debtor, not to the creditor, the bankruptcy court explicitly stated that, in preventing the Fund from filing its claims, "there is clearly some prejudice to the Fund . . . ."[60]

### 2.     Length of the Delay and Its Impact

The Fund "concedes that the delay between the [p]roof of [c]laim

---

[57]     Hr'g Tr. at 71:14–71:17.

[58]     *See* App. Mem. at 8.

[59]     *See Enron*, 419 F.3d at 131 ($12.5 million claim and an $858 billion bankruptcy estate).

[60]     Hr'g Tr. at 75:6–75:7.

deadline and the . . . filing is long — almost three years."[61] In absolute terms, a three-year delay far exceeds delays that courts have considered substantial in similar cases.[62] The court additionally discussed the prejudicial effect of the delay on judicial proceedings:

> the fact that the claim was filed after the proposal of the modified plan that had been negotiated with [other creditors], and indeed on the eve of the confirmation hearing for that plan, meant that those very sensitive negotiations which had proceeded for months, were at that point, or would be at that point, have been [sic] significantly jeopardized by the filing of the late claim.[63]

Given this determination based on the significant delay, nothing suggests that the court abused its discretion by holding that this factor weighs in favor of DPH.

### 3. Reason for the Delay

The Fund states, on appeal, that its neglect resulted from the erroneous belief "that it did not possess a claim against the Debtors as of the Bar Date" and that such neglect was excusable because "[a]ll information available to the [Fund] indicated that [d]ebtors were continuing to pay all of their workers' compensation

---

[61] App. Mem. at 8.

[62] *See Enron*, 419 F.3d at 128 (six month delay is substantial); *In re Dana Corp.*, No. 06–10354, 2008 WL 2885901, at *6 (Bankr. S.D.N.Y. 2008) (twenty-one month delay is substantial); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (S.D.N.Y. 2007) (fifteen month delay is substantial).

[63] Hr'g Tr. at 74:9–74:15.

obligations both before and after the bankruptcy filing."[64] The information that the Fund is referring to is the Human Capital Obligations Order and 2008 letters which indicated DPH's intent to continue to pay its own workers' compensation. However, this does not refute the bankruptcy court's specification that "[t]he order did not direct the debtors to [pay]. Therefore there was always a risk that based upon changed circumstances, and the debtor's exercise of its business judgment, the debtors would not make such payments."[65] Furthermore, the 2008 letters were sent *after* the bar date. Thus, only the order comes into consideration when examining the reason for the Fund's initial belief that it did not possess a claim.

Because "there was always a risk" that DPH would stop paying workers' compensation,[66] the Fund was obligated to file a claim based on the contingency that DPH would become unable to pay. The definition of a claim, set forth in Section 101(5)(a) of the Bankruptcy Code, and the procedural details of bar dates, as discussed in Rule 3003(c)(2), make clear that contingent claims must be filed before the bar date. The Fund knew or should have known of this requirement because the Bar Date Notice specifically set forth the Section

---

[64] App. Mem. at 9.

[65] Hr'g Tr. at 65:18–65:21.

[66] *Id.* at 65:19.

101(5)(a) definition of a claim.[67]

Because the Fund had received notice that contingent claims must be filed before the Bar Date, the bankruptcy judge stated that

> there is . . . a serious question here as to whether the claim's [sic] late filing was within the reasonable control of the claimant. I believe it was, given the claimant's proffered excuses here being ultimately excuses of a legal nature, where the law and the bar date and the claim notice are clear in laying out the legal requirement to file the proof of claim.[68]

Legal mistakes are usually not considered excusable neglect[69] — thus, the court did not abuse its discretion when deciding that "reason for the delay," as a *Pioneer* factor, tilts the balance toward DPH.

### 4. Good Faith

The parties, on appeal, do not dispute that the Fund's delay in filing was in good faith.[70] This factor weighs in favor of the Fund.

### 5. Balancing of the Factors

The bankruptcy court did not abuse its equitable discretion in balancing the *Pioneer* factors. In finding only one of the factors (good faith) to be

---

[67] *See* Opp. Mem. at 10.

[68] Hr'g Tr. at 73:16–73:22.

[69] *See Pioneer*, 507 U.S. at 392.

[70] *See* App. Mem. at 10; Opp. Mem. at 22.

clearly resolved in favor of the Fund, the court acted within its discretion in deciding that the Fund should not be permitted to file late claims. Additionally, the court did not abuse its discretion by giving greater weight to the third factor in its *Pioneer* analysis.[71]

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order dismissing the Fund's motion is affirmed. The Clerk of the Court is directed to close this appeal.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 30, 2010

---

[71] In *In re Crane Rental Co., Inc.*, a bankruptcy court in Massachusetts held that a creditor who filed late because of "failure to recognize that it held a contingent claim" could nonetheless file the claim based on a finding of excusable neglect. 334 B.R. 73, 77 (D. Mass 2005). However, the Massachusetts court, following First Circuit rather than Second Circuit law regarding the weighing of the *Pioneer* factors, gave substantial weight to the absence of prejudice to the debtor and lack of inconvenience due to a short — thirty-day — delay period. *See id.* at 77. The court mentioned that "but for the fact that there is no prejudice, the outcome may have been different." *Id.* at 77–78.

## - Appearances -

**For Appellant Fund:**

Dennis J. Raterink, Esq.
Michigan Assistant Attorney General
Labor Division
P.O. Box 30736
Lansing, Michigan 48909
(517) 373-1176

**For Appellee DPH:**

Kayalyn A. Marafioti, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000

-and-

John Wm. Butler, Jr., Esq.
John K. Lyons, Esq.
Albert L. Hogan, III, Esq.
Ron E. Meisler, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700